[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-16031
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 30, 2010
JOHN LEY
CLERK

D.C. Docket No. 06-01216-CV-T-23-TBM


JOSEPH LEBLANC,

Plaintiff-Appellee,

versus

UNIFUND CCR PARTNERS,
ZB LIMITED PARTNERS,
CREDIT CARD RECEIVABLES FUND,

Defendants -Appellants.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 30, 2010)

Before MARCUS and HILL, Circuit Judges, and VOORHEES,* District Judge.

_____

*Honorable Richard L. Voorhees, United States District Judge for the Western District of North Carolina, sitting by designation.

PER CURIAM:

Unifund CCR Partners, G.P., and its general partners, Credit Card Receivables Fund, Inc., and ZB Limited Partners, appeal the partial grant of summary judgment in favor of Plaintiff Joseph Leblanc ("LeBlanc"). LeBlanc brought suit against Unifund CCR Partners, G.P. ("Unifund"), Credit Card Receivables Fund, Inc., and ZB Limited Partners for violating both the federal Fair Debt Collection Practices Act, 15 U.S.C. §1692, and the Florida Consumer Collection Practices Act, FLA. STAT. Chapter 559. Although Unifund was largely successful in defending LeBlanc's claims, the district court found in favor of LeBlanc on his federal claims under Sections 1692e(5) and 1692f. For the reasons set forth herein, we reverse the district court's summary judgment order and remand Plaintiff's causes of action pursuant to 15 U.S.C. §§1692e(5) and 1692f for consideration by a jury.

## I.

Joseph LeBlanc is a resident of Tampa, Florida, and a "consumer" within the meaning of the federal Fair Debt Collection Practices Act ("FDCPA") and the Florida Consumer Collection Practices Act ("FCCPA").[1] The debt sought to be

---

[1] Pursuant to both the FDCPA and the FCCPA, "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. §1692a(3); FLA. STAT. §559.55(2) (including "debtor" in the same definition).

collected is a "consumer debt" within the meaning of the acts.[2]  (Am.Compl. ¶2)

Unifund is a general partnership organization incorporated under the laws of Ohio

and is in the business of purchasing and collecting consumer debt.  As such,

Unifund is a "debt collector" for purposes of the FDCPA.[3]  Credit Card

Receivables Fund, Inc. ("CCRF") and ZB Limited Partners ("ZB") are Unifund's

general partners.  Aside from the entities' relationship with Unifund, CCRF and

ZB are not directly involved in the debt collection activity being challenged.

None of the defendants were registered as "consumer collection agencies" with the

State of Florida.[4]

In or around February 2003, LeBlanc quit making payments towards a credit

card account he had with Bank One, Delaware ("Bank One").  (LeBlanc Dep. at

17)  Effective August 24, 2004, Unifund purchased LeBlanc's charged off credit

---

[2]  The FCCPA defines "debt" or "consumer debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." FLA. STAT. §559.55(1).  Under the FDCPA, "debt" has the exact same definition.  See 15 U.S.C. §1692a(5).

[3] A "debt collector" is defined by the FDCPA as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." 15 U.S.C. §1692a.

[4] "Consumer collection agency" refers to "any debt collector or business entity engaged in the business of soliciting consumer debts for collection or of collecting consumer debts, which debt collector or business is not expressly exempted as set forth in §559.553(4)." FLA. STAT. §559.55(7).

3

card account from Bank One.[5]  Bank One was owned by JP Morgan Chase or one of its subsidiaries.  Unifund received all of its information on the LeBlanc account from Bank One, including a statement reflecting a balance due of $11,535.94 and interest at an annual percentage rate of 19.99%.

On or about November 8, 2005, LeBlanc received a letter from Unifund informing him Unifund had purchased LeBlanc's charged off debt from Bank One. (Pl.'s  Summ. J. Br. Exibit B)  The letter sent to LeBlanc purported to be from Unifund's "Legal Department."  The letter referenced the account number as: "4417129736239563 NAT.ASSC.OF RLTORS(LOGO)PLAT," identified the account's inception date as "02/10/2002," explained that interest had been accruing since the account "was charged off on 9/30/2003," and averred that the credit card account had "a current balance of $17,216.12."   As required by statute, the letter advised LeBlanc that he had thirty days to dispute the debt or it would be assumed valid.  See 15 U.S.C. §1692g.   The letter included the following express warnings:

> "If we are unable to resolve this issue within 35 days we may
> refer this matter to an attorney in your area for legal
> consideration.  If suit is filed and if judgment is rendered
> against you, we will collect payment utilizing all methods

---

[5] The act of charging off a debt refers to a mechanism whereby creditors determine that a debt is unlikely to be repaid by the borrower and, therefore, cannot be collected.  As a result, the loan is written off and deemed a loss of principal and interest.  However, the charged off debt is not forgiven. As in the instant case, the charged off debt may then be sold to a collection agency for further efforts toward satisfaction.

legally available to us, subject to your rights below."

***

"This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose."

Although LeBlanc later testified in his deposition that certain aspects of the letter were incorrect, LeBlanc never took any steps to contact Unifund or dispute the crux of the letter. Unifund made no additional effort to contact LeBlanc and filed suit in state court, presumably alleging LeBlanc's contractual obligation to satisfy the debt.[6]

LeBlanc initiated the instant federal cause of action alleging multiple violations of the FDCPA and FCCPA. Cross-motions for summary judgment were filed. The district court granted Unifund's motion on all of the FCCPA claims and granted LeBlanc partial summary judgment under two provisions of the FDCPA, specifically §§1692e(5) and 1692f. The district court opined that Unifund violated the FDCPA because Unifund failed to register as an "out-of-state consumer collection agency" with the State of Florida, as required by the FCCPA. The district court held that Unifund could not legally sue Leblanc to collect the debt without first registering with Florida's Office of Financial Regulation as required by Section 559.553 of the FCCPA. Because the court also viewed the dunning

---

[6] The record on appeal does not inform us about the result of the state court litigation.

5

letter[7] as a threat to take legal action, it held that Unifund violated the FDCPA for "threat[ening] to take action that could not legally be taken" and for using "unfair or unconscionable means to collect a debt." 15 U.S.C. §§1692e(5) and 1692f.

In order to avoid the expense of trial, the parties stipulated that LeBlanc's actual and statutory damages were $2,000. Final Judgment was entered on October 8, 2008. Unifund's timely appeal followed.[8]

## II.

We review *de novo* the district court's grant of summary judgment. See Boim v. Fulton County Sch. Dist., 494 F.3d 978, 982 (11th Cir. 2007).

Under Fed. R. Civ. P. 56(c), summary judgment is "appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists "no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Clemmons v. Dougherty County, Ga., 684 F.2d 1365, 1368 (11th Cir. 1982).

Once the moving party satisfies its burden, the burden of persuasion shifts

---

[7] Since "dunning" means "to make persistent demands upon [another] for payment," a "dunning letter" may be considered as simply another name for a letter of collection. See "dunning." Merriam-Webster Online Dictionary. 2010. 25 January 2010 <httg://www.merriam-webster.com/dictionary/dunning>

[8] LeBlanc did not cross-appeal.

to the non-moving party to establish the existence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). An issue is material if, "under the applicable substantive law, it might affect the outcome of the case." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The non-moving party must set forth, by affidavit or other appropriate means, specific facts showing a genuine issue of material fact. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 323-24. The court will not weigh the evidence or make findings of fact; instead the court's role is to determine if there is sufficient evidence upon which a reasonable juror could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

## III.

### A. Cognizability of FDCPA Action for Violation of FCCPA

As a matter of first impression in our Circuit, we consider whether a federal cause of action pursuant to Section 1692e of the FDCPA for threatening to take an action that cannot legally be taken is cognizable when premised upon failure to register as a consumer collection agency as required by state law, namely, Section 559.553 of the FCCPA.[9] (See discussion, *infra*, Section "III,B,iii") Determining

---

[9] In terms of taking an action that could not legally be taken, the theory is that if a debt collector cannot bring suit for whatever reason, it should not represent to the consumer, even implicitly, that it will sue. See Gaetano v. Payco of Wisc. Inc., 774 F.Supp. 1404, 1414 (D. Conn. 1990) (quoting Commentary, 53 Fed. Reg. 50106, col. 1 (1998)). In other words, a consumer collection agency that fails to comply with state consumer protection laws - yet proceeds to engage in the business of consumer debt collection

whether LeBlanc has pled a federal cause of action for violating state law provides an opportunity to consider the objectives of the FDCPA and the FCCPA, as well as the interplay between these state and federal statutes. In light of the statutes' congruent purposes, we affirm the district court on this issue and now hold that violation of the FCCPA may support a federal cause of action under the FDCPA.

In enacting the FDCPA, Congress sought "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); Brown v. Budget Rent-A-Car Syss., Inc., 119 F.3d 922, 924 (11th Cir.1997) (per curiam). Accordingly, the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" as well as

within the state - cannot threaten the consumer with litigation where its own noncompliance would prohibit it from initiating legal action in the state.

The federal district courts which have analyzed this issue within the context of the FDCPA and the respective state consumer protection registration or licensing statutes have all held that violation of state law may support a federal cause of action under the FDCPA. See, e.g., Sibley v. Firstcollect, Inc., 913 F.Supp. 469, 471 (M.D. La. 1995); Russey v. Rankin, 911 F.Supp. 1449, 1459 (D. N.M. 1995) (attempting to collect a debt without first registering as a debt collector as required by New Mexico statute violates the FDCPA); Kuhn v. Account Control Tech., Inc., 865 F.Supp 1443, 1451-52 (D. Nev. 1994) (finding failure to register as a debt collector under Nevada law violated 15 U.S.C. §1692f ); Gaetano v. Payco of Wisc. Inc., 774 F.Supp. 1404, 1414-15 n.8 (D. Conn. 1990) (finding failure to register as a debt collector in Connecticut violated the FDCPA because not registering "deprived the plaintiff of her right as a consumer debtor residing within the state to have the defendant's qualifications as a collection agency reviewed by state authorities.")

the use of "unfair or unconscionable" means of collection.  15 U.S.C. §§ 1692(e) and 1692f. The FDCPA does not ordinarily require proof of intentional violation and, as a result,  is described by some as a strict liability statute.  See 15 U.S.C. §1692k; Ellis v. Solomon and Solomon, P.C., 591 F.3d 130, 135 (2nd Cir.2010). Available  remedies under the FDCPA include actual damages, the potential for additional damages up to $1,000 subject to the Court's discretion, and reasonable costs and attorney's fees.  15 U.S.C. §1692k(a)(1)-(3).

Similarly, the FCCPA, Florida's consumer protection statute, was enacted as a means of regulating the activities of consumer collection agencies within the state.  "The FCCPA is a laudable legislative attempt to curb what the legislature evidently found to be a series of abuses in the area of debtor-creditor relations." 10A FLA. JUR.2D CONSUMER § 138 (2010).   The FCCPA also defines and protects an individual's right to privacy with regards to consumer collections practices in the state.  See generally, Laughlin v. Household Bank, Ltd., 969 So.2d 509 (Fla. Dist.Ct. App. 1st Dist. 2007).

Under the FCCPA, "no person shall engage in business in this state as a consumer collection agency . . . without first registering in accordance with this part [Sections 559.553 and 559.555] . . . and thereafter maintaining a valid

9

registration.".[10] FLA. STAT. §559.553(1) and (2). Section 559.553 of the FCCPA does not itself provide a private right of action. FLA. STAT. §559.72 (identifying types of FCCPA violations that give rise to a private cause of action and omitting §559.553). Despite the unavailability of a state cause of action, Section 559.785 of the FCCPA provides that it is a misdemeanor for "any person not exempt from registering . . . to engage in collecting consumer debts in this state without first registering." FLA. STAT. §559.785.

In terms of the relationship between the FDCPA and state consumer protection laws like the FCCPA, the FDCPA does not "annul, alter, affect, or exempt" any person or entity subject to its provisions from complying with the

---

[10] In order to register as a consumer collection agency under the FCCPA, the debt collector must pay a registration fee and provide certain information to the state. See FLA. STAT. §559.555(1) and (2). The registration must be renewed annually. Id. §559.555(3). More specifically:

> (1) The registrant shall pay to the office a registration fee in the amount of $200. All amounts collected shall be deposited by the office to the credit of the Regulatory Trust Fund of the office.
> (2) Each registrant shall provide to the office the business name or trade name, the current mailing address, the current business location which constitutes its principal place of business, and the full name of each individual who is a principal of the registrant. "Principal of a registrant" means the registrant's owners if a partnership or sole proprietorship, corporate officers, corporate directors other than directors of a not-for-profit corporation organized pursuant to chapter 617 and Florida resident agent if a corporate registrant. The registration information shall include a statement clearly identifying and explaining any occasion on which any professional license or state registration held by the registrant, by any principal of the registrant, or by any business entity in which any principal of the registrant was the owner of 10 percent or more of such business, was the subject of any suspension or revocation.

FLA. STAT. §559.555.

laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with the FDCPA.[11]  See 15 U.S.C. §1692n; see also Hartman v. Great Seneca Fin. Corp., 569 F.3d 606, 611 (6th Cir.2009) (describing the FDCPA as "extraordinarily broad"). This is entirely consistent with the FCCPA, which expressly provides:

> Nothing in this part shall be construed to limit or restrict the continued applicability of the federal Fair Debt Collection Practices Act to consumer collection practices in this state. ***This part is in addition to the requirements and regulations of the federal act.***  In the event of any inconsistency between any provision of this part and any provision of the federal act, the provision which is more protective of the consumer or debtor shall prevail.

FLA. STAT. §559.552 (emphasis added).   The FCCPA also makes clear that its remedies are "cumulative to other sanctions and enforcement provisions" for any violation by an out-of-state consumer debt collector.  FLA. STAT. §559.565.

Relevant to the question presented here, the FDCPA and FCCPA have certain parallels.  For instance, Section 559.72(9) of the FCCPA  prohibits a debt collector from "asserting the existence of [a] legal right when such person  knows that the right does not exist."[12]   See  FLA. STAT. §559.72(9); compare 15 U.S.C.

---

[11] One authority explains that the FDCPA "establishes minimum boundaries for unlawful debt collection, leaving intact state laws which provide higher levels of consumer protection from collection activity." 104 AM. JUR. *Proof of Facts* 3d 1, § 5 (2009) (citing Piper v. Portnoff Law Assocs., 396 F.3d 227, 236 n. 11  (3rd Cir.2005)).

[12] In contrast to the FDCPA, Section 559.72(9) of the FCCPA requires a plaintiff to demonstrate that the debt collector defendant possessed *actual knowledge*  that the threatened means of enforcing the debt was

11

§1692e(5).  At least one federal district court has held that no state cause of action exists under §559.72(9) of the FCCPA for failure to comply with the registration requirement of  §559.553.  See  Conner v. BCC Fin. Mgt. Servs., Inc., 489 F.Supp.2d 1358, 1361-62 (S.D.Fla.2007). Unifund contends that because an analogous  provision of the FCCPA does not itself support a private right of action for failure to register, then to premise a federal cause of action upon the same conduct and legal theory would undermine or circumvent the state's consumer protection scheme.  We disagree.

The FCCPA unequivocally states its goal – to provide the consumer with the most protection possible under either the state or federal statute.  See FLA. STAT. §559.552 ("In the event of any inconsistency ... the provision which is more protective of the consumer or debtor shall prevail.")  Further, the fact that the FCCPA deemed its remedies cumulative reveals that the Florida legislature contemplated dual enforcement – that an "out-of-state  debt collector" could quite possibly  be subject to the sanctions and enforcement provisions of both of the various states or the FDCPA.  Finally, we attribute significant weight to Florida's chosen means of enforcement.  The Florida legislature's  determination that a debt collector's failure to register under  FLA. STAT. §559.555 and subsequent pursuit of

---

unavailable.  See McCorriston v. L.W.T., Inc., 536 F.Supp.2d 1268, 1279 (M.D.Fla.2008) (internal citations omitted); Kaplan v. Assetcare, Inc., 88 F.Supp.2d 1355, 1361-63 (S.D.Fla.2000).

unauthorized debt collection activity is a misdemeanor criminal act demonstrates the seriousness with which the State of Florida intends to address violations of the FCCPA. Unifund's argument to the contrary is not persuasive. We therefore hold that a violation of the FCCPA for failure to register may, in fact, support a federal cause of action under Section 1692e(5) of the FDCPA for threatening to take an action it could not legally take.

As explained herein, we do not hold that all debt collector actions in violation of state law constitute *per se* violations of the FDCPA. Rather, the conduct or communication at issue must also violate the relevant provision of the FDCPA.[13] See Wade v. Reg'l Credit Ass'n, 87 F.3d 1098, 1099-1101 (9th Cir. 1996); Ferguson v. Credit Mgmt. Control, Inc., 140 F.Supp.2d 1293, 1302 (M.D. Fla. 2001). "The FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation. Only those collection activities that use "any false, deceptive, or misleading representation or means," including "[t]he threat to take any action that cannot legally be taken" under state law, will also constitute FDCPA violations." Carlson v. First Revenue Assurance, 359 F.3d 1015, 1018 (8th Cir.2004); see generally, Beler v. Blatt, Hasenmiller, Leibsker &

---

[13] With a written communication, liability will depend in large part on the particular language chosen by the author.

Moore, LLC, 480 F.3d 470, 474 (7ᵗʰ Cir.2007) (Section 1692f "creates its own rules (or authorizes courts ...to do so); it does not so much as hint at being an enforcement mechanism for other rules of state and federal law.")

We turn now to the merits of LeBlanc's §1692e(5) claim.

**B.  Section 1692e(5)**

Section 1692e of the FDCPA  prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e; Sparks v. Phillips & Cohen Assocs., Ltd., 641 F.Supp.2d 1234, (6ᵗʰ Cir.2008) (explaining the "gist of §1692e" as a requirement that any "aspect of a debt collector's communication - whether explicit or implied - [that] has the purpose or effect of  making a debtor  more likely to respond ..." is, in fact, true.)  More  specifically, within the non-exhaustive list of potential violations of  Section 1692e, Subsection 1692e(5) prohibits a debt collector from "threatening to take action that cannot legally be taken or that is not intended to be taken."[14] 15 U.S.C. §1692e(5).

As an initial matter, Unifund  is  subject to the  FDCPA.  It is undisputed that Unifund is a "debt collector"  seeking to recover from LeBlanc on an

---

[14]  For purposes of clarification, we distinguish the two different means of establishing the second part of the §1692e(5) analysis by explaining that whether the action threatened is "one which could be legally taken" is a separate inquiry altogether from the inquiry regarding the debt collector's "threat to take any action ... not intended to be taken."

outstanding "consumer debt."   In addition, in light of the state court lawsuit

Unifund brought to recover on the debt, we summarily reject Unifund's contention

that it has not engaged in "collection activity" with regards to LeBlanc.[15]  As a

result, our focus is on whether Unifund engaged in any practice  prohibited by the

FDCPA.

The next issue then is whether, under the FDCPA, Unifund's dunning letter

constitutes a threat to take action which could not legally be taken  – namely, to

commence legal proceedings.  Our framework for analysis is two-fold.  First, we

consider whether the language of the letter constitutes a threat for purposes of

§1692e(5).  See Jeter v. Credit Bureau Inc., 760 F.2d 1168, 1176 (11th Cir. 1985).

If so, we consider whether the action threatened is one which could be legally

taken.  Id.

For reasons explained herein, we hold that in the analysis of the debt

collection practices at issue here, first and foremost, the question whether

Unifund's dunning letter to Leblanc constitutes a threat for purposes of §1692e(5)

presents a genuine issue of material fact that precludes judgment as a matter of

---

[15]  The FDCPA does not expressly define "collection activity."  However, the Supreme Court has held that initiation of legal proceedings by a creditor *can* constitute a debt collection activity.  Heintz v. Jenkins, 514 U.S. 291, 293-96 (1995) (quoting BLACK'S LAW DICTIONARY 263 (6th ed.1990) which states that "To collect a debt or claim is to obtain payment or liquidation of it, either by personal solication or legal proceedings."); but see Trent v. Mortgage Elec.  Registration Sys., Inc., 618 F.Supp.2d 1356 (M.D.Fla.2007) (initiation of foreclosure suit by a secured creditor is not a debt collection practice barred by the FCCPA), aff'd, 288 Fed. Appx. 571 (11th Cir.2008).

law.

### i. The "Least -Sophisticated Consumer" Standard

We employ the "least-sophisticated consumer" standard to evaluate whether

a debt collector's communication violates §1692e of the FDCPA.[16]  Jeter, 760

F.2d at 1175-77.  In adopting the "least-sophisticated consumer" standard, we

took into account the purposes of the FDCPA, the general jurisprudence

concerning §5 of The Federal Trade Commission Act ("FTC" Act),[17] and the prior

FTC enforcement in the debt collection area.  Jeter, 760 F.2d at 1174.  Because we

thought the FDCPA sought to grant consumers *more* protection, we viewed the

FDCPA as an expansion of the protections provided by previously existing federal

legislation and regulation.  Id.  Accordingly, we rejected the "reasonable

consumer" standard in favor of the "least-sophisticated consumer" standard:

> Because we believe that Congress intended the standard
> under the FDCPA to be the same as that enunciated in
> the relevant FTC cases ... and because we believe that
> the FDCPA's purpose of protecting consumers is best

---

[16]  In Jeter, we introduced our discussion of the legal standard as "the legal standard applicable *generally* to claims of false, deceptive, or misleading representations under 15 U.S.C. §1692e."  Jeter, 760 F.2d at 1172 (emphasis provided).  Nonetheless, the Jeter panel considered application of the "threatening to take action ... *not intended to be taken*" portion of  §1692e(5). For obvious reasons, application of the "least-sophisticated consumer" standard was not required in that the relevant intent - whether the debt collector truly intends to take the threatened action - is evaluated from the perspective of the debt collector as opposed to the debtor.  Id. at 1175.

[17]  Section 5 of the FTC Act declares unlawful "unfair or deceptive acts or practices in commerce."  15 U.S.C. §45(a)(1).

> served by a definition of 'deceive' that looks to the tendency of language to mislead the least sophisticated recipients of a debt collector's letters ..., we adopt the *Exposition Press* standard of least sophisticated consumer ....

Jeter, 760 F.2d at 1175; Exposition Press, Inc. v. FTC, 295 F.2d 869 (2nd Cir.1961).

The "least-sophisticated consumer" standard is consistent with basic consumer-protection principles. Jeter, 760 F.2d at 1172-75(internal citations omitted); Clomon v. Jackson, 988 F.2d 1314, 1318 (2d. Cir. 1993) ("The basic purpose of the 'least-sophisticated consumer' standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.") As we discussed the FTC Act and its jurisprudence in Jeter, we noted:

> That law was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous ..." and [t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced. There is no duty resting upon a citizen to suspect the honesty of those with whom he transacts business. Laws are made to protect the trusting as well as the suspicious.

Jeter, 760 F.2d at 1172-73 (quoting in part Fed. Trade Comm'n v. Standard Educ. Society, 302 U.S. 112, 116 (1937)); see also Clomon, 988 F.2d at 1318; United

17

States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir.1996).

"'The least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." Clomon, 988 F.2d at 1319.  However, the test has an objective component in that "[w]hile protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness ...." Nat'l Fin. Servs., Inc., 98 F.3d at 136 (citing Clomon, 988 F.2d at 1319); Barany-Snyder v. Weiner, 539 F.3d 327, 333 (6th Cir.2008) ("least-sophisticated consumer" standard is an objective test); Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85 (2nd Cir.2008) (same).

### ii.  Determining The Threshold Issue Under Section 1692e(5) – Whether Unifund's Letter Constitutes A Threat – Is For The Jury

Determining whether Unifund's letter could reasonably be perceived as a "threat to take legal action"  under the "least- sophisticated consumer" standard in the circumstances of this case is best left to jury decision.  In the summary judgment context, the burden of persuasion is on Leblanc to prove that no reasonable jury, viewing the letter through the eyes of a "least-sophisticated

18

consumer," and making all reasonable inferences in Unifund's favor, could find that the letter was merely informative as opposed to threatening.[18]  In this case, if the dunning letter, read as a whole, is not construed as a threat to take legal action, LeBlanc's FDCPA claim under §1692e(5) fails regardless of the registration issue.

The FDCPA does not define what constitutes a "threat." Black's Law Dictionary defines "threat" as "a communicated intent to inflict harm or loss on another or another's property . . . [or] an indication of an approaching menace [such as] the threat of bankruptcy." BLACK'S LAW DICTIONARY 1489-90 (7ᵗʰ ed. 1999); United States v. Silva, 443 F.3d 795, 797-98 (11th Cir. 2006) (where a term is not defined within statute analysis begins with term's plain and unambiguous meaning).  Additionally, before enactment of the FDCPA, "[t]he FTC and the federal courts [] consistently held that it is a deceptive practice to falsely represent that unpaid debts would be referred to a lawyer for immediate legal action." Jeter, 760 F.2d at 1173 (internal citations omitted).  Indeed, in a different context, we explained that a reasonable jury could find "potentially

---

[18] Examples of how the "least-sophisticated consumer" standard has been applied by other courts to protect consumers are discussed in Clomon, supra. The types or categories of collections notices recognized as violations of the FDCPA in other cases include generally: 1) notices that contain language that "overshadows" or "contradicts" other language that informs consumers of their rights; 2) notices that mislead by employing formats or typefaces which tend to obscure important information that appears in the notice; and 3) notices that deceive by being open to more than one reasonable interpretation, at least one of which is inaccurate. Clomon, 988 F.2d at 1319 (internal citations omitted).  Here, LeBlanc contends that the letter was, in fact, a threat to take an action it could not legally take and, therefore, was inaccurate.

deceptive or false use of threats to recommend legal action" as violative of §1692e(5). <u>Id.</u> at 1179 (discussing the substantive differences between Sections 1692e(5) and (10) and 1692d of the FDCPA).

In this case, the parties heartily disagree about the nature of the letter, more particularly, whether the letter is in any way threatening. The first paragraph of the dunning letter explains that Unifund purchased LeBlanc's charged off debt and provides the particulars of the debt it seeks to collect upon. The second paragraph includes the critical language:

> "*If* we are unable to resolve this issue within 35 days we *may* refer this matter to an attorney in your area for legal consideration. *If* suit is filed and *if* judgment is rendered against you, we *will* collect payment utilizing all methods legally available to us, subject to your rights below."

(Exhibit B) (emphasis added) The third paragraph directs LeBlanc to a website that may be used to "resolve" his account. Special instructions for making payment (i.e., how, where, when, etc.) are included. The next paragraph contains the "validation of debt" notice and procedures for disputing the debt required by statute. <u>See</u> <u>generally</u>, 15 U.S.C §1692g. Then the letter is expressly identified as a "communication [] from a debt collector" and LeBlanc is told:

> "This is an attempt to collect a debt and any information

20

obtained will be used for that purpose."

The final paragraph reads, "Please feel free to contact us ..." and provides a telephone number and a website. As already noted, the letter is from Unifund's "Legal Department." At the very bottom of the letter, an asterisk directs the consumer to see the reverse side for "important information regarding [his] rights."[19]

In our view, reasonable jurors applying the "least-sophisticated consumer" standard could disagree as to the inferences to be drawn from Unifund's letter to LeBlanc. The letter clearly serves to inform the consumer-debtor. The letter conveys a significant amount of information to the recipient, requests action or response from the debtor, and uses the word "please" throughout. In terms of consequences, it reads: "*If* we are unable to resolve this issue within 35 days we *may* refer this matter to an attorney in your area for legal consideration." Read literally, the letter merely advises that legal action is *possible*, that it is *possible* for Unifund to refer the matter to an attorney for consideration, that a lawsuit is only one *possible* outcome or result. Moreover, while there is no express statement regarding what is meant by "resolve," the fact that this option is set apart from the

---

[19] The back of the letter includes a Privacy Statement and additional contact information for inquiries or feedback concerning Unifund's Privacy Policy.

21

mechanics of making payment tends to show that something less than immediate payment in full may be acceptable. A least-sophisticated consumer could read the letter as offering at least two options for responding. Taking the most literal reading, a reasonable juror could find the dunning letter was more informative than threatening and did not threaten imminent legal action.

However, a reasonable juror applying the "least-sophisticated consumer" standard could also view this letter as either an overt or thinly-veiled threat of suit. (See Summ.J. Order at 19.) Unifund mistakenly relies on the use of conditional language such as "if" and "may" in an effort to safeguard the letter from being construed as "threatening." Despite the conditional language, a reasonable juror could read the dunning letter as intimating that a lawsuit will follow *immediately* after the end of the 35 day "grace" period. More significantly, in the event of suit, the tone of the letter shifts to more forceful language – "If suit is filed and if judgment is rendered against you, *we will collect payment utilizing all methods legally available to us* ...." This portion of the letter supports a reasonable inference that Unifund is threatening LeBlanc with legal action, that it is Unifund's intent to deprive LeBlanc of his personal property. Finally, although not determinative, another hint or suggestion of intimidation is that the letter is

sent from Unifund's "Legal Department."[20]  See, e.g., Rosenau v. Unifund Corp. ,
539 F.3d 218, 224 (3d Cir. 2008) (analyzing identical language and discussing
different inferences that could be drawn from fact that collection letter is sent from
"Legal Department," including inference that an attorney is already involved).[21]

In Jeter we explained that where the parties reasonably disagree on the
proper inferences that can be drawn from the debt collector's letter, resolution is
for the trier of fact - not for the court on summary judgment.  See Jeter, 760 F.2d at
1176.  For these reasons, this issue is one best submitted to the finder of fact.[22]

### iii.   As An Unregistered "Out-of-State Consumer Debt Collector" Unifund Could Not  Legally Bring Suit Against LeBlanc Within The State of Florida

We now consider the second part of the §1692e(5) analysis, namely,
whether Unifund, in its letter, threatened action which could not legally be taken.
Determining whether Unifund could legally initiate a lawsuit against LeBlanc

---

[20] LeBlanc's independent Section 1692e(3) claim – which prohibits "false representation or implication that ... any communication is from an attorney" – questioned Unifund's inclusion of  "Legal Department" in the letter but was dismissed at summary judgment. (Summ. J. Order at 12-13.)  Notwithstanding summary judgment of the §1692e(3) claim at the district court level, it is appropriate to consider this assertion as one of several factors that may influence whether a "least-sophisticated consumer" could find the letter threatening.

[21] (Summ. J. Order at 14.)

[22] Upon remand, should this factual question be decided in favor of Unifund, the remaining §1692e(5) issues may become moot.

implicates the underlying Florida state statute allegedly violated by Unifund.  See

FLA. STAT. §559.553.

The FCCPA requires consumer collection agencies to register as such in accordance with §559.555 before engaging in debt collection activity within the state.  FLA. STAT. §559.553.  Unifund argues that it is not subject to the FCCPA's registration requirement as an "out-of-state consumer debt collector" for various reasons.  We disagree.  An "out-of-state consumer debt collector" is defined by the FCCPA as:

> any person whose business activities in this state involve both collecting or attempting to collect consumer debt from debtors located in this state by means of interstate communication originating from outside this state and soliciting consumer debt accounts for collection from creditors who have a business presence in this state.  For purposes of this subsection, a creditor has a business presence in this state if either the creditor or an affiliate or subsidiary of the creditor has an office in this state.

FLA. STAT. §559.55(8).   Thus, pursuant to the statutory definition, the business activities of an "out-of-state consumer debt collector" must involve both "collecting or attempting to collect consumer debt ..." and "soliciting consumer debt accounts for collection from creditors who have a business presence within [Florida]."   Id.  Consistent with the definition, the FCCPA exempts from

registration "[a]ny out-of-state consumer debt collector who does not *solicit* consumer debt accounts for collection from credit grantors who have a business presence [within Florida]." See F̲L̲A̲. S̲T̲A̲T̲. §559.553(4)(h) (emphasis added).

Unifund's business activities clearly involve "collecting or attempting to collect consumer debt" from debtors located within Florida by means of interstate communication originating from outside of the state. The dunning letter sent by Unifund to Leblanc expressly states its purpose as an attempt to collect a debt. In addition, the letter originated from outside the State of Florida and was sent via interstate communication, namely, the U.S. Mails.[23]

Although Unifund claims that it does not engage in "soliciting consumer debt accounts," the record evidence supports the opposite conclusion.[24] (See, *supra*, Section "III,B,iii") Though the statute does not define "soliciting," the term "solicitation" is defined as "[t]he act or an instance of requesting or seeking to obtain something; a request or petition" or "an attempt or effort to gain

---

[23] The letter appears to have been sent from the State of Michigan. A post office box in Linden, Michigan is included at the top left-hand corner even though a Cincinnati, Ohio address identified within the body of the letter as a Unifund address for making payment is also included.

[24] Indeed, the district court found Defendants' claim on this point to be "disingenuous in light of the undisputed facts ...." (Summ.J.Order at 16)

25

business." BLACK'S LAW DICTIONARY 1398 (7th ed. 1999). Unifund, as a debt collector, requests or seeks new clients from other creditors and then attempts to gain business by acquiring charged off consumer debt accounts. See McCorriston v. L.W.T., Inc., 536 F.Supp.2d 1268, 1278 (M.D.Fla.2008) (reasonable to infer that debt collector is in the business of "soliciting consumer debts for collection"). Accordingly, we find that Unifund "solicits" consumer debt accounts.[25]

To the extent Unifund represents that it does not itself have an office or business presence in Florida, the fact remains that Bank One, the original creditor and owner of LeBlanc's debt, is an affiliate of JP Morgan Chase. Under the statute, "a creditor has a business presence in this state if either the creditor *or an affiliate or subsidiary of the creditor* has an office in this state." FLA. STAT. §559.55(8) (emphasis added). JP Morgan Chase has 290 offices in Florida.[26] Because at least one Bank One affiliate has an office in Florida, Unifund qualifies as an "out-of-state debt collector" within the meaning of the FCCPA.

Finally, requiring Unifund to register as a debt collector before filing a

---

[25] We reject Unifund's argument that the mere purchase of an account does not involve any solicitation.

[26] ank One "merged without assistance" into Chase Bank, USA, National Association on October 1, 2004. Chase Bank, USA is an affiliate of JPMorgan Chase & Co. JPMorgan Chase & Co. maintains 290 offices in Florida. See, e.g., publically available information found at the FDIC website: http://www2.fdic.gov/idasp.main.asp.

lawsuit aimed at collecting a debt does not violate Unifund's Constitutional right of access to the courts. Article I, Section 21 of the Florida Constitution, provides as follows: "Access to courts. – The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." Legislatures may however "impose[] a reasonable condition precedent to filing a claim." Warren v. State Farm Mut. Auto. Ins. Co., 899 So.2d 1090, 1097 (Fla. 2005). Here, the FCCPA's registration requirement does not deny Unifund access to the courts. The FCCPA merely requires that it register as a debt collector with the State of Florida before it may "engage in collection activities." The registration process is not overly burdensome, rigorous, or costly. Therefore, requiring Unifund to register with the State of Florida before filing a lawsuit is a reasonable condition precedent to filing a claim.

### iv.  The Question of *Bona Fide* Error Is Not Properly Before This Court

Unifund contends that even if registration was, in fact, required under the Florida statute, it is entitled to a "*bona fide* error" defense and therefore not automatically liable under the FDCPA. The *bona fide* error defense is found in 15 U.S.C. §1692k(c):

A debt collector may not be held liable in any

action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

See McCorriston, 536 F.Supp.2d at 1274, 1278; Heintz, 514 U.S. at 295-96 (liability under FDCPA not automatic even though debt collector is unsuccessful in collection proceedings).

According to Unifund, there was little guidance available in November 2005, when Unifund sent its letter to LeBlanc. At that time, there was one state appellate opinion discussing the registration requirement under the FCCPA. Florida's Second District Court of Appeals had opined that registration was not necessary before initiating collection activities. See Welch v. Fla. W. Coast, Inc., 816 So.2d 711, 713 (Fla.Dist.Ct.App.2002).[27]

Unifund raised the *bona fide error* defense in its Answer & Affirmative Defenses filing as its Twelfth Affirmative Defense, but did not mention the doctrine (or the statutory provision on which it relies) within its summary

---

[27] The Welch opinion preceded the FCCPA's 2003 amendments, including the addition of Section 559.785, making certain acts of non-compliance a misdemeanor criminal offense of the first degree. To the extent Welch was authoritative in 2005, it seems that any debt collector familiar with the 2003 amendments might have chosen a more cautious course of action and simply registered before engaging in the debt collection business within Florida.

judgment memoranda.[28]  Because applicability of the *bona fide error* defense was not presented to the district court at summary judgment, and consequently not addressed by the district court in the appealable final order, it is not properly before this Court on appeal.

"This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir.2004) (internal quotations and citations omitted); see also Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1222 n. 8 (11th Cir.2004) ("The district court was not presented with and did not resolve [the legal question].  Therefore, we will not consider this argument on appeal.")   The purpose for the rule is this:

> "[W]e review claims of judicial error in the trial courts.  If we were to regularly address questions - particularly fact-bound issues - that districts court never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court."

Access Now, Inc., 385 F.3d at 1331.   In other words, as explained on prior

---

[28] In its Twelfth Affirmative Defense, Unifund states: "To the extent that any violation of the FDCPA and the FCCPA took place, said violation was not intentional and resulted from a *bona fide* error that occurred notwithstanding the maintenance of procedures reasonably adopted to avoid such errors, and thus creates an exception barring any claim under the FDCPA and the FCCPA." (Def.'s Answer & Affirmative Defenses at 9)

occasions, "We cannot allow Plaintiff to argue a different case from the case . . .

presented to the district court." Id. (quoting Irving v. Mazda Motor Corp., 136

F.3d 764, 769 (11th Cir.1998)).

**C. Section 1692f**

LeBlanc was also successful in the district court on his Section 1692f claim.

Section 1692f of the FDCPA prohibits a debt collector from "using unfair or

unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §1692f.

The FDCPA identifies various ways in which a debt collector might violate

§1692f, but also explains that the examples within the subsections are not intended

to limit general application of the "unfair or unconscionable" means prohibition.

See 15 U.S.C. §1692f(1)-(8). LeBlanc initially alleged that Unifund sought to

collect an amount not "expressly authorized by the agreement creating the debt or

otherwise permitted by law."[29] 15 U.S.C. §1692f(1). However, this theory was

abandoned below as LeBlanc was unable to produce any evidence in support of

his claim that the credit card debt (balance or interest rate) was incorrect.

After electing to forego any challenge concerning the amount of his debt

obligation, LeBlanc relied instead on Unifund's non-compliance with §559.553 as

---

[29] Subsection 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly
authorized by the agreement creating the debt or permitted by law."

the alleged "unfair or unconscionable" means. The district court held that because Unifund was, in fact, required to register as an "out-of-state consumer debt collector" per Florida law before threatening legal action, it was "compelled to conclude that, at a minimum, Unifund used *unfair* means in an effort to attempt to collect the debt."[30] (Summ. J. Order at 22) (emphasis added). In other words, the lower court based its decision regarding Unifund's liability under §1692f on its §1692e(5) findings. Because we find LeBlanc's §1692f claim dependent in part upon his success under §1692e(5), remand is required.[31] However, in the interest of providing the trial court with the necessary guidance, we address the pertinent legal arguments raised on appeal.

Aside from the examples of violations provided within Section 1692f, the FDCPA does not purport to define what is meant by "unfair" or "unconscionable." See Beler, 480 F.3d at 474 (With respect to Section 1692f, "[t]he phrase 'unfair or unconscionable' is as vague as they come.") The plain meaning of "unfair" is

---

[30] The district court cited the Kuhn and Gaetano decisions as persuasive authority. See Kuhn, 865 F.Supp. at 1452 (failure of debt collector to comply with state's licensing requirement deprived consumer of her right to have the state authorities review debt collector's qualifications as collection agency); Gaetano, 774 F.Supp. at 1415.

[31] If a jury were ultimately to conclude that the letter could not reasonably have been viewed by a "least-sophisticated consumer" as a "threat to take an action that cannot legally be taken," it's doubtful the letter could be perceived as "unfair" or "unconscionable."

31

"marked by injustice, partiality, or deception."[32]   Significantly, in <u>Jeter</u>, we noted in dictum that in the FTC context, "[a]n act or practice is deceptive or unfair ... if it has the tendency or capacity to deceive."  <u>Jeter</u>, 760 F.2d at 1172.  The term "unconscionable" means "having no conscience"; "unscrupulous"; "showing no regard for conscience"; "affronting the sense of justice, decency, or reasonableness." BLACK'S LAW DICTIONARY 1526 (7th ed. 1999).

Unifund suggests that failure to register under §559.555 of the FCCPA cannot sustain the cause of action since it does not constitute a "means" for purposes of LeBlanc's §1692f claim. "Means" is defined as "a method, a course of action, or an instrument by which an act can be accomplished or an end achieved." AMERICAN HERITAGE DICTIONARY 1116 (3d ed. 1992).  The proper inquiry is not whether failure to register constitutes a "means," but whether Unifund's failure to register makes the chosen means "unfair or unconscionable." Here, it is the letter sent by Unifund to Leblanc that is the designated  "means" of attempting to collect a consumer debt.  Therefore, Unifund's lack of registration with the State of Florida is an appropriate consideration in deciding whether Unifund's "means" of collection were "unfair or unconscionable."

---

[32] <u>See</u> "unfair." Merriam-Webster Online Dictionary. 2010. 11 February 2010 <httg://www.merriam-webster.com/dictionary/unfair>

LeBlanc's Section 1692f claim should also be viewed through the lens of the "least-sophisticated consumer." We addressed multiple FDCPA claims in Jeter including claims asserted under §§1692e(5), (10), and 1692d. While we explained that the same standard should be applied under the FDCPA as with its predecessor, the FTC, we did not adopt the "least-sophisticated consumer" standard for all purposes. Because fairness and unconscionability necessarily include inquiry regarding deceptiveness, and because this inquiry is less dependent upon the individual debtor's circumstances than the "means" employed by the debt collector and the debtor's reaction to said means, we deem LeBlanc's §1692f claim more akin to §1692e than §1692d. Accordingly, consistent with the other circuits that have decided the issue, we hereby adopt the "least-sophisticated consumer" standard for §1692f analyses.[33] See, e.g., Hartman, 569 F.3d at 611-12

---

[33] For purposes of §1692d, we adapted the "least-sophisticated consumer" standard in order to take into account factors other than a debtor's level of sophistication. Jeter, 760 F.2d at 1179. Section 1692d of the FDCPA encompasses "conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. §1692d. In keeping with the aims of the FDCPA, and the type of language that may offend or abuse, we recognized "[t]hat every individual, whether or not he owes the debt, has a right to be treated in a reasonable or civil manner." Jeter, 760 F.2d at 1178 (quoting 123 Cong. Rec. 10241 (1977)). We explained:

> Whether a consumer is more or less likely to be harassed, oppressed, or abused by certain debt collection practices does not relate solely to the consumer's relative sophistication; rather, such susceptibility might be affected by other circumstances of the consumer or by the relationship between the consumer and the debt collection agency. For example, a very intelligent and sophisticated consumer might well be susceptible to harassment, oppression, or abuse because he is poor (*i.e.*, has limited access to the legal system), is on probation, or is otherwise at the mercy of a power relationship. Although the standard enunciated [with respect to 1692e] is not precisely applicable here, we believe that the consumer protective purposes of the FDCPA require us to adopt an analogous standard for violations of §1692d. ***Thus, we hold that claims under §1692d***

33

(applying least-sophisticated consumer" standard to claims under §§1692e, 1692e(10), and 1692f); <u>Wade</u>, 87 F.3d at 1099-1100 (applying "least - sophisticated consumer" standard to claims under §§1692e(10) and 1692f).

Finally, as with our evaluation of §1692e(5), whether Unifund's letter constitutes an "unfair or unconscionable means to ... attempt to collect a debt" for purposes of §1692f presents a jury question.

> **D.    Unifund's General Partners ZB and CCR Are At Least Jointly and Severally Liable for any Judgment Rendered Against Unifund Regardless of Whether They Violated the FDCPA or Their Status as Debt Collectors**

Unifund also appeals the district court's finding that its general partners are also liable under the FDCPA. While the issue of general partner liability under the FDCPA has never been decided in our Circuit, other circuit courts have found that partners of a debt collector limited partnership may be held vicariously liable for the partnership's conduct. <u>See</u> <u>Berlin v. Litton Loan Servicing</u>, LP, No. 8:06-cv-760-T-24, 2006 WL 1992410, at *2 (M.D.Fla. July 14, 2006)(citing <u>Police v. Nat'l</u>

---

*should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse.*

<u>Jeter</u>, 760 F.2d at 1179 ("[d]eception or falsehood alone ... is wholly different from the conduct condemned in (1) through (6) of §1692d).

Tax Funding, L.P., 225 F.3d 379, 405 (3d Cir. 2000); Miller v. McCalla, Raymer,

Padrick, Cobb, Nichols, and Clark, L.L.C., 214 F.3d 872, 876 (7th Cir. 2000)).

There is no dispute that ZB and CCR are general partners of Unifund.

The district court correctly noted that Florida's law of partnerships provides

that the law of the "jurisdiction in which a partnership has its chief executive

office governs relations among partners and between partners and a partnership."

FLA. STAT. §620.8106(1). Because Unifund is an Ohio corporation, Ohio law

governs general partner liability. Under Ohio law, "where loss or injury is caused

to any person . . . or any penalty is incurred, by any wrongful act or omission of

any partner acting in the ordinary court of the business . . . the partnership is liable

therefore to the same extent as the partner so acting or omitting to act." OHIO REV.

CODE ANN. §1775.12; See Wayne Smith Constr. Co., Inc. v. Wolman, Duberstein

& Thompson, 604 N.E.2d 157, 161 (Ohio 1992). While ZB and CCR may not be

debt collectors under the FDCPA, that fact is immaterial because they are general

partners of Unifund.[34] Thus, ZB or CCR are liable "to the same extent" as

Unifund regardless of whether or not ZB or CCR are debt collectors, and whether

or not the ZB or CCR entities violated the FDCPA.

**IV.**

---

[34] ZB and CCR conceded below that their liability could stem from general partnership law. (Summ. J. Order at 4 n. 5)

For all these reasons, the district court's grant of partial summary judgment in favor of LeBlanc as to his claims pursuant to 15 U.S.C. §§1692e(5) and 1692f is **REVERSED  and REMANDED** for further proceedings  consistent with this opinion.