Willie COLLINS, Plaintiff,

v.

ERIN CAPITAL MANAGEMENT, LLC, Defendant.

No. 12–22839–CIV.

United States District Court, S.D. Florida.

Oct. 28, 2013.

Scott David Owens, Hallandale, FL, for Plaintiff.

Barbara Fernandez, Hinshaw & Culbertson LLP, Miami, FL, Robert Eric Sickles, Hinshaw & Culbertson, Tampa, FL, for Defendant.

## *ORDER*

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court on Defendant, Erin Capital Management, LLC's ("Erin Capital['s]") Motion for Final Summary Judgment ... ("Motion") [ECF No. 60], filed with a Statement of Material Facts ... ("Defendant's SMF") [ECF No. 61] on June 25, 2013. Plaintiff, Willie Collins ("Collins"), filed a Response ... ("Response") [ECF No. 68] together with a Response to Defendant's Statement of Material Facts ("Plaintiff's SMF") [ECF No. 69], on July 26, 2013. Erin Capital filed its Reply ... ("Reply") [ECF No. 73] and Reply to Plaintiff's Counterstatement of Material Facts ("Reply to Plaintiff's SMF") [ECF No. 72], on August 5, 2013. The Court has carefully considered the parties' written submissions, the record, and applicable law.

### I. BACKGROUND

This class action involves alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. sections 1692–1692p ("FDCPA") relating to Erin Capital's filing of writ of garnishment actions against Collins and members of the class. Erin Capital filed a Florida state court action against Collins for breach of contract and sought to collect a debt purchased by Erin Capital, which was originally owed to Citibank from Collins's use of a Citibank credit card. (*See* Def.'s SMF ¶ 1; Pl.'s SMF ¶¶ 1, 26; Reply to Pl.'s SMF ¶¶ 23, 26). A Florida court issued a default final judgment in favor of Erin Capital and against Collins on November 8, 2006. (*See* Def.'s SMF ¶ 6; Pl.'s SMF ¶ 6). Erin Capital thereafter filed a motion seeking a continuing writ of garnishment against Collins. (*See* Def.'s SMF ¶ 7; Pl.'s SMF ¶ 7). On February 29, 2012, the state court entered a final judgment of continuing writ of gar-

nishment against Collins and in favor of Erin Capital, permitting Erin Capital to seek a wage garnishment against Collins. (*See* Def.'s SMF ¶¶ 8–9; Pl.'s SMF ¶¶ 8–9).

In a deposition taken on May 15, 2013, Collins did not recall ever having a "Citibank account" or a "Citibank credit card." (May 15, 2013 Collins Dep. 16:20–17:7, 18:3–18:6 [ECF No. 61–1] ). Collins also did not recall the specific purchases made on the credit card. (*See* Def.'s SMF ¶ 5; Pl.'s SMF ¶ 5). Collins acknowledged the First Amended Class Action Complaint . . . ("Amended Complaint") [ECF No. 19] in this case states, "Defendant sought to collect an alleged debt from Plaintiff arising from Plaintiff's use of a Citibank MasterCard credit card . . . used by Plaintiff for personal, family or household purposes, including but not limited to the purchase of such things as clothes, groceries, personal gifts, and travel related expenses" (May 15, 2013 Collins Dep. 17:19–18:1), but explained he did not review the First Amended Complaint prior to its filing (*see id.* at 18:21–19:3).

In an Affidavit filed on July 25, 2013, Collins attests he had no "present recollection of using a 'Citibank' Master[C]ard" prior to and during his deposition, "although [he] did recall having a Master[C]ard while in College." (Collins Aff. ¶ 3 [ECF No. 68–4] ). Following his deposition, Collins obtained the account number of the Citibank MasterCard at issue and confirmed it was the account he had while in college. (*See id.* ¶ 4). While Collins maintains he still has no "present recollection" of making any charges on the Citibank MasterCard, he asserts he has never made any business purchases and has nev-

er used any credit card for any purpose other than the purchase of personal or household goods and services. (*Id.* ¶¶ 6–7).

Erin Capital has no knowledge as to the nature of the charges comprising the debt associated with Collins's use of the Citibank credit card. (*See* Pl.'s SMF ¶ 20; Def.'s Reply to Pl.'s SMF ¶ 20). Erin Capital purchases defaulted credit card debts and subsequently attempts, through various means, to collect the delinquent debts from Florida consumers. (*See* Pl.'s SMF ¶ 21; Def.'s Reply to Pl.'s SMF ¶ 21). In its efforts to collect the debts, Erin Capital did not send letters originating from outside of Florida via U.S. mail to Collins. (Boyle Aff. ¶ 4 [ECF No. 61–5] ).[1] Erin Capital similarly did not have direct communication with Collins aside from court filings. (*See* Def.'s SMF ¶ 17; Pl.'s SMF ¶ 17). Erin Capital hired an attorney to file and prosecute lawsuits on its behalf. (*See* Def.'s SMF ¶ 18; Pl.'s SMF ¶ 18; Def.'s Reply to Pl.'s SMF ¶ 22).

On August 4, 2012, Collins initiated the present action by filing a Class Action Complaint for Damages ("Complaint") [ECF No. 1]. Count I alleges Erin Capital failed to obtain a debt collection license as required by Florida Statute section 559.553, and in violation of 15 U.S.C. section 1692e ("Section 1692e"). (*See* Compl. ¶¶ 29–30). Count I seeks statutory damages, actual damages for the amounts unlawfully collected by Erin Capital from the members of the class, and litigation expenses and costs. (*See id.* 9). Count II for restitution seeks actual damages for the total dollars unlawfully collected by Erin Capital from Collins.[2] (*See id.* 10).

---

**1.** James Brian Boyle is a managing member of Erin Capital. (*See* Boyle Aff. ¶ 1).

**2.** Although Collins initially asserted count II on behalf of a class, he subsequently sought to

certify a class with respect to count I only. (*See* Mar. 21, 2013 Order, 290 F.R.D. 689, 692 n. 1 (S.D.Fla.2013) [ECF No. 47] ("Collins seeks certification of the 'FDCPA Class' only." (citations omitted))).

Erin Capital subsequently obtained a Florida license on August 27, 2012. (*See* Def.'s SMF ¶ 11; Pl.'s SMF ¶ 11). Collins's Amended Complaint was filed on October 4, 2012.[3] (*See* Am. Compl.).

The Court thereafter certified a class of plaintiffs consisting of:

> (i) all persons (ii) who[ ] were the subject of collection activity from Erin Capital (iii) in an attempt to collect a debt incurred for personal, family, or household purposes (iv) who incurred actual damages in the form of direct, indirect, voluntary, or involuntary payment arising from or attributable to Erin Capital's collection efforts (v) during the one year period prior to the filing of the original writ of garnishment in this action through the date of certification.

(Mar. 21 Order, 290 F.R.D. at 701). On September 6, 2013, notice was mailed to the 246 class members identified ("Class Plaintiffs") by a third party retained to distribute notices. (*See* Antonetti Aff. ¶ 2 [ECF No. 103–1])[4]. Erin Capital presently moves for summary judgment. (*See generally* Mot.).

## II. LEGAL STANDARD

Summary judgment shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a), (c). The movant's initial burden on a motion for summary judgment "consists of a responsibility to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (alterations and internal quotation marks omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir.1995)) (internal quotation marks omitted). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 Fed.Appx. 839, 841 (11th Cir.2008) (quoting *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir.1997) (internal quotation marks omitted)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07–21516–CIV, 2008 WL 2914977, at *2 (S.D.Fla. Jul. 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## III. ANALYSIS

Erin Capital moves for summary judgment and raises several arguments in sup-

---

**3.** The claims asserted in the Amended Complaint are only slightly different from those alleged in the Complaint. Count I of the Amended Complaint seeks "[a]ctual damages[ ] including but not limited to the total dollars unlawfully collected by ECM from the members of the FDCPA Class over the last year (plus interest)," while the Complaint only sought specific actual damages and no others. (*Compare* Compl. 9, *with*, Am. Compl. 10).

**4.** Arlene Antonetti is a case manager for First Class, Inc., a company retained by Collins to send notice to Class Plaintiffs. (*See* Antonetti Aff. ¶ 1).

port. Erin Capital contends: (1) the *Rooker–Feldman*[5] doctrine bars Collins and Class Plaintiffs' claims; (2) the claims in counts I and II are precluded by collateral estoppel; (3) some of the Class Plaintiffs' claims are either time-barred or outside the scope of the claim; (4) the Florida Consumer Collection Practices Act's ("FCCPA['s]")[6] registration requirement does not apply to Erin Capital; (5) the FCCPA's registration requirement violates the Commerce Clause; (6) no violation of the FDCPA occurred as there was no false, deceptive, or misleading statement; and (7) the FDCPA does not apply because Collins has produced no evidence to establish the relevant debt was consumer in nature. (*See generally* Mot.). The Court addresses the arguments relating to the potential bars to Collins's claims before turning to the constitutionality and application of the FCCPA and FDCPA, and concludes by addressing whether the class is over-inclusive.

### A. Erin Capital's Asserted Impediments to Collins's Claims

#### 1. *Rooker–Feldman* Doctrine

Erin Capital asserts the Class Plaintiffs' claim for actual and statutory damages in count I of the Amended Complaint is inextricably intertwined with the state court judgments, and the *Rooker–Feldman* doctrine precludes reconsideration of those judgments by a federal district court. (*See* Mot. 3). Collins, as class representative, argues "[t]he *Rooker–Feldman* doctrine does not prevent a district court from exercising subject matter jurisdiction simply because a party attempts to litigate ... a matter previously litigated in state court, as long as the federal plaintiff pres-

ents an independent claim even if that claim denies a legal conclusion reached by the state court." (Resp. 4 (citation omitted)).

■■■■ "The *Rooker–Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (citation omitted). "The doctrine applies both to federal claims raised in the state court and to those 'inextricably intertwined' with the state court's judgment." *Id.* (citation omitted). "A claim is inextricably intertwined if it would 'effectively nullify' the state court judgment, or it 'succeeds only to the extent that the state court wrongly decided the issues.'" *Id.* (citations omitted). "'However, even if a claim is inextricably intertwined with the state court's judgment, the doctrine does not apply if the plaintiff had no reasonable opportunity to raise his federal claim in state proceedings.'" *Harper v. Chase Manhattan Bank*, 138 Fed.Appx. 130, 132–33 (11th Cir.2005) (quoting *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir.2001)).

■■■■ "The *Rooker–Feldman* doctrine is confined to cases that, like *Rooker* and *Feldman*, were 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Vasquez v. YII Shipping Co., Ltd.*, 692 F.3d 1192, 1195–96 (11th Cir.2012) (emphasis and footnote call number omitted) (quoting *Exxon Mobil*

---

**5.** *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

**6.** Fla. Stat. § 559.55 *et seq.*

Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)). The Eleventh Circuit has previously held claims brought under the FDCPA are subject to the constraints of the *Rooker–Feldman* doctrine. *See Harper*, 138 Fed.Appx. at 133. And even where plaintiffs "seek money damages instead of an outright overturning of the state-rendered [ ] judgments," it does not change the applicability of the doctrine if "money damages would only [have been] available in the first instance if the state court's decision … [was] found to have been wrongful." *O'Neal v. Bank of Am., N.A.*, No. 8:11–cv–107–T–17–TGW, 2012 WL 629817, at *6 (M.D.Fla. Feb. 28, 2012) (citations omitted). Put differently, a plaintiff cannot assert a violation of the FDCPA " 'by seeking exactly what the state court awarded.' " *Stefanski v. McDermott*, No. 1:08–cv–00123, 2009 WL 418254, at *4 (N.D.Ind. Feb. 17, 2009) (quoting *Kelley v. Med–1 Solutions, LLC*, No. 1:07–cv–1245–SEB–JMS, 2008 WL 345986, at *4 (S.D.Ind. Feb. 6, 2008)).

■ District courts in the Eleventh Circuit have recognized a distinction between FDCPA claims seeking to overturn state court judgments and FDCPA claims seeking to hold defendants liable for violations of the statute occurring during collection efforts preceding any judgment. *See, e.g., Solis v. Client Servs., Inc.*, No. 11–23798–Civ, 2013 WL 28377, at *4 (S.D.Fla. Jan. 2, 2013) ("Thus, even where a debtor has incurred a valid debt that a creditor is entitled to collect, a debt collector may violate the FDCPA if its methods in attempting to collect the debt do not comply with the requirements of the FDCPA. Such a violation may occur despite the validity of the debt and in no way is dependent upon the legitimacy of the debt."); *Drew v. Rivera*, No. 1:12–cv–9–MP–GRJ, 2012 WL 4088943, at *3 (N.D.Fla. Aug. 6,

2012), *adopted by, Drew v. Rivera*, No. 1:12–cv–9–MP–GRJ, 2012 WL 4088871, at *1 (N.D.Fla. Sept. 27, 2012) ("The fact that a state court judgment was entered recognizing the credit card debt is not mutually exclusive to claims that a debt collector violated the FDCPA in seeking to collect on the indebtedness or violated the FDCPA in attempting to collect on the state court judgment that was entered. Thus, the Court would not be overturning the state court's judgment, which concluded that the debt was enforceable, if it were to find Defendant liable for unfair debt collection practices."). In other words, if an "allegation is premised on [d]efendants' conduct and practices in collecting the debt, [and] not the validation or legitimacy of the debt itself, it is not precluded by the *Rooker–Feldman* doctrine." *Solis*, 2013 WL 28377, at *5; *see also Velardo v. Fremont Inv. & Loan*, 298 Fed.Appx. 890, 892 (11th Cir.2008) ("[T]he court focuses on the federal claim's relationship to the issues involved in the state court proceeding, instead of on the type of relief sought by the plaintiff." (citation omitted)).

This approach is consistent with the law in other circuits. *See, e.g., Snyder v. Daniel N. Gordon, P.C.*, No. C11–1379 RAJ, 2012 WL 3643673, at *8 (W.D.Wash. Aug. 24, 2012) ("[Plaintiff] does not ask this court to invalidate or reject the [state] court's action. She does not deny that she owes American Express a debt, as the [state] court ruled she does. She does not complain of any injury she suffered because of the [state] court's judgment against her. She instead complains of the steps Defendants took in their attempts to collect the debt. The court therefore holds that the [state] court judgment against [Plaintiff] does not preclude her from bringing the claims she made in this case."); *Bradshaw v. Hilco Receivables, LLC*, 765 F.Supp.2d 719, 727 n. 7 (D.Md. 2011) ("In the present case, the *Rooker–*

*Feldman* doctrine is not implicated—Plaintiffs are not attempting to appeal unfavorable state court decisions, and this Court's holdings will not disturb any underlying state actions.... [R]egardless of the legality of any state court collection lawsuits filed by [the defendant], the individual plaintiffs are entitled to damages as a result of [the defendant's] failure to obtain a license under Maryland and federal law."); *Foster v. D.B.S. Collection Agency*, 463 F.Supp.2d 783, 798 (S.D.Ohio 2006) ("Plaintiffs' alleged injuries here are not the result of the state court judgments themselves, but rather from the allegedly illegal practices Defendants used to obtain those state court judgments. Plaintiffs' claims arose prior to the various entries of default judgment in state court, and ... they are separate and distinct from those judgments." (citation omitted)).

██ Collins asserts violations of the FDCPA for Erin Capital's failure to register as a debt collector and obtain the relevant Florida license before initiating garnishment actions against Collins and Class Plaintiffs. Collins seeks statutory damages, but also seeks actual damages "including but not limited to the total dollars unlawfully collected by [Erin Capital] from the members of the FDCPA Class over the last year" and "an order instructing [Erin Capital] to disgorge their [sic] illgotten monies from the FDCPA Class members." (Am. Compl. 10). At least part of the relief sought in this litigation is precisely the type of impermissible case brought by state-court losers complaining of injuries caused by state-court judgments rendered before this case commenced and inviting the Court's review and rejection of the state-court judgments. *See Vasquez*, 692 F.3d at 1195–96. Collins's attempt to only seek money damages

instead of an outright overturning of the state-rendered judgment does not avoid the application of the *Rooker–Feldman* doctrine, *see O'Neal*, 2012 WL 629817, at *6, as Collins cannot seek the opposite of what the state court awarded, *see Stefanski*, 2009 WL 418254, at *4, without running afoul of the *Rooker–Feldman* doctrine.

Collins had a reasonable opportunity to raise his federal claim in the state proceedings as he would have been permitted to raise it as a defense. *See Harper*, 138 Fed.Appx. at 133 n. 2 ("TILA, ECOA, and FDCPA claims are brought in Florida courts." (citations omitted)). Moreover, the entry of a default judgment against Collins—as opposed to a full trial—is of no consequence. *See O'Neal*, 2012 WL 629817, at *6 ("Even though default judgments were rendered against them in this case, Plaintiffs had (and may well still have) the opportunity to pursue their claims in state court." (citations omitted)). As such, Erin Capital is entitled to summary judgment on count I in so far as it seeks actual damages of this specific sort.

██ Nevertheless, Collins alleges viable violations of the FDCPA, which, if proven, would subject Erin Capital to liability. These violations do not implicate the validity of the judgment or debt, but rather focus on the methods used by Erin Capital in collecting the debt. *See Solis*, 2013 WL 28377, at *5; *Drew*, 2012 WL 4088943, at *3. Put differently, even where Collins incurred a valid debt that Erin Capital was entitled to collect, Erin Capital still may violate the FDCPA if it failed to register with the state before instituting collection actions. Under these circumstances, the Court cannot grant summary judgment for Erin Capital on this aspect of count I.[7] *See Solis*, 2013

---

**7.** In the Motion, Erin Capital asserts the

*Rooker–Feldman* doctrine operates only to bar

WL 28377, at *6 ("Summary judgment is denied on the alleged violations of 15 U.S.C. § 1692(e)(2) and 1692g(b), except that summary judgment is granted to the extent that, as relief for these alleged violations, [the plaintiff] seeks to void the state-court judgment."); *cf. Velardo v. Fremont Inv. & Loan*, No. 6:07–cv–1253–Orl–31GJK, 2008 WL 958184, at *2 (M.D.Fla. Apr. 8, 2008) (striking certain requests for damages which violate the *Rooker–Feldman* doctrine on a motion to dismiss); *Bowen v. Wells Fargo Bank, N.A.*, No. 2:11–cv–91–FtM–29SPC, 2011 WL 3627320, at *3 (M.D.Fla. Aug. 17, 2011) ("Therefore, the Court will strike the requests for rescission and title to the Property in the Wherefore clauses for Counts I and II. The motion to dismiss on the basis of the *Rooker—Feldman* doctrine is otherwise denied.").

### 2. Collateral Estoppel

Erin Capital argues collateral estoppel bars counts I and II as the counts rest solely upon the allegation "that Erin Capital unlawfully filed wage garnishments," an issue already decided by a Florida court. (Mot. 10). Erin Capital specifically contends collateral estoppel bars count I as all of the writs of garnishment at issue remain lawful and binding, and it bars count II as the state court denied Collins's motion to vacate the default judgment which formed the basis for the writ of garnishment against Collins. (*See id.* 11). In response, Collins argues the relevant issue—whether Erin Capital violated the FDCPA by engaging in collection activity without a li-

cense—was never addressed in the underlying wage garnishment action. (*See* Resp. 14–15).

 "[U]nder the Full Faith and Credit Clause of the United States Constitution and the federal full faith and credit statute implementing that constitutional provision, federal courts considering whether to give preclusive effect to state court judgments must apply the State's law of collateral estoppel." *Vazquez v. Metro. Dade Cnty.*, 968 F.2d 1101, 1106 (11th Cir.1992) (footnote call numbers omitted) (citing *Migra v. Warren City School Dist.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)). Under Florida law, "[c]ollateral estoppel prevents relitigation of an issue resolved in a prior judicial proceeding, provided that (1) the identical issue has been fully litigated, (2) by the same parties, and (3) a final decision has been rendered by a court of competent jurisdiction." *Cmty. Bank of Homestead v. Torcise*, 162 F.3d 1084, 1086 (11th Cir. 1998) (citing *Essenson v. Polo Club Assocs.*, 688 So.2d 981, 983 (Fla. 2d DCA 1997)). "[T]he litigated issue must have been 'a critical and necessary part of the prior determination.' " *Wingard v. Emerald Venture Fla. LLC*, 438 F.3d 1288, 1293 (11th Cir.2006) (other citation omitted) (quoting *Goodman v. Aldrich & Ramsey Enters., Inc.*, 804 So.2d 544, 546 (Fla. 2d DCA 2002)). Also, "collateral estoppel is an affirmative defense, and the party asserting it bears the burden to show that such an issue was formerly determined

---

the claims in count I. (*See* Mot. 3 ("The Class Plaintiffs' claims for actual damages under Count I are inextricably intertwined with the judgments entered by the state court judges. Thus, the *Rooker–Feldman* doctrine bars Class Plaintiffs' claims for actual damages.")). Although count II in the Amended Complaint similarly seeks "[a]ctual damages; for the total dollars unlawfully collected by [Erin Capi-

tal] from the members of the Restitution Class ... [and a]n order instructing [Erin Capital] to disgorge their [sic] ill-gotten monies" (Am. Compl. 12), Erin Capital does not seek summary judgment with respect to count II on the same basis. Consequently, the Court's analysis with respect to the *Rooker–Feldman* doctrine only extends to count I.

with sufficient certainty." *Lozman v. City of Riviera Beach, Fla.,* 713 F.3d 1066, 1079 (11th Cir.2013) (citation and internal quotation marks omitted).

█ The claims in both counts I and II, as addressed in the preceding discussion, seek relief for violations of the FDCPA. Specifically, the Amended Complaint asserts Erin Capital violated the FDCPA by failing to obtain the necessary debt collection license as required by Florida Statute section 559.553, and in violation of Section 1692e. (*See* Am. Compl. ¶ 30). On the present record, it is not at all clear that this issue—whether Erin Capital violated the FDCPA—was fully litigated in the underlying state action, or that it was a critical and necessary part of the state court's determination. As such, Erin Capital has not carried its burden in establishing this defense and summary judgment is not appropriate as to either count on this basis.

Erin Capital acknowledges the issue of whether it violated the FDCPA was not previously decided, but maintains the state court has already decided the broader issue of whether the wage garnishment actions were lawful, which necessarily determines the more specific question. (*See* Reply 7). Erin Capital's insistence on the breadth of the state court judgments is misplaced. There is plainly no basis for the Court to determine the purported violations of the FDCPA were fully litigated or even raised in the state court. Moreover, Erin Capital's argument ignores the distinction drawn in the previous analysis under the *Rooker–Feldman* doctrine; namely, the asserted violations are independent of the underlying state action to collect the debt. *See Fritz v. Resurgent Capital Servs., LP,* 955 F.Supp.2d 163, 174–75 (E.D.N.Y.2013) ("Plaintiffs—as defendants in the collection actions—did not raise the FDCPA ... as [a] defense[ ] to

collection or as [a] counterclaim[ ]. There is, moreover, no conceptual reason for them to have done so. Such claims challenge the method of debt collection, not the underlying debt. Thus, an adjudication that plaintiffs are indebted to defendants would not preclude plaintiffs from claiming that defendants violated the FDCPA...." (internal citation omitted)); *Solis,* 2013 WL 28377, at *4 ("[E]ven where a debtor has incurred a valid debt that a creditor is entitled to collect, a debt collector may violate the FDCPA if its methods in attempting to collect the debt do not comply with the requirements of the FDCPA. Such a violation may occur despite the validity of the debt and in no way is dependent upon the legitimacy of the debt.").

Accordingly, collateral estoppel is not applicable to the instant action, and summary judgment is inappropriate on this basis.

## B. Constitutionality and Application of the FCCPA and FDCPA

### 1. Constitutionality of the FCCPA under the Dormant Commerce Clause

Erin Capital asserts the "FCCPA's registration requirement ... violates the Commerce Clause because the FCCPA must not regulate contracts that occurred in a state other than Florida." (Mot. 14 (citation omitted)). Collins argues the filing of lawsuits against Florida consumers constitutes some conduct within the State of Florida sufficient to avoid the boundaries of the Commerce Clause. (*See* Resp. 12).

█ "The Commerce Clause empowers Congress to regulate interstate commerce." *Fresenius Med. Care Holdings, Inc. v. Tucker,* 704 F.3d 935, 942 (11th Cir.2013) (citing U.S. Const. art. I,

§ 8, cl. 3). "Although the clause speaks literally only to the powers of Congress, it is well settled that it has a 'dormant' aspect as well." *Id.* (alteration, citation, and internal quotation marks omitted). " 'This [dormant aspect] prevents a State from jeopardizing the welfare of the Nation as a whole by placing burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear.' " *Fla. Transp. Servs., Inc. v. Miami–Dade Cnty.,* 703 F.3d 1230, 1243 (11th Cir.2012) (quoting *Am. Trucking Ass'ns v. Mich. Pub. Serv. Comm'n,* 545 U.S. 429, 433, 125 S.Ct. 2419, 162 L.Ed.2d 407 (2005)). "Laws challenged under the dormant Commerce Clause are examined using a two-tiered analysis. First, we consider whether the law or regulation directly regulates or discriminates ·against interstate commerce, or has the effect of favoring in-state economic interests." *Id.* at 1243–44 (citation and internal quotation marks omitted). "Second, if the law or regulation advances a legitimate local interest and has only indirect effects on interstate commerce, we apply the balancing test from *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), and invalidate the law only if the burden on interstate commerce clearly exceeds the local benefits." *Id.* at 1244 (citation and internal quotation marks omitted).

◼ In this latter balancing test, courts evaluate "the 'practical effect of the statute' in light of 'what effect would arise if not one, but many or every, State adopted similar legislation.' " *Id.* at 1245 (quoting *Healy v. Beer Inst., Inc.,* 491 U.S. 324, 336, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989)). "The Supreme Court stated as 'the general rule' that '[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only inci-

dental, it will be upheld....' " *Id.* at 1255 (alteration in original) (quoting *Pike,* 397 U.S. at 142, 90 S.Ct. 844). "Once a legitimate public interest is identified, 'the question becomes one of degree.' " *Id.* (quoting *Pike,* 397 U.S. at 142, 90 S.Ct. 844). "The extent of the burden on interstate commerce 'that will be tolerated will depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.' " *Id.* (quoting *Pike,* 397 U.S. at 142, 90 S.Ct. 844). Under the *Pike* balancing test, the challenger "bear[s] the initial burden of demonstrating that the [challenged regulation] ... ha[s] a discriminatory effect on interstate commerce." *S. Waste Sys., LLC v. The City of Coral Springs, Fla.,* 687 F.Supp.2d 1342, 1367 (S.D.Fla.2010) (footnote call number omitted) (citing *Cherry Hill Vineyard, LLC v. Baldacci,* 505 F.3d 28, 33 (1st Cir.2007)).

◼ An application of the two-tiered analysis indicates Erin Capital does not assert the registration requirement in the FCCPA directly regulates or discriminates against interstate commerce, or has the effect of favoring in-state economic interests. Indeed, a plain reading of the registration requirement indicates it broadly applies. *See* FLA. STAT. § 559.553(1) ("[N]o *person* shall engage in business in this state as a consumer collection agency or continue to do business in this state as a consumer collection agency without first registering in accordance with this part, and thereafter maintaining a valid registration." (emphasis added)); *cf. Hauk v. LVNV Funding, LLC,* 749 F.Supp.2d 358, 363 (D.Md.2010) (finding a law which requires that "a person must have a license whenever the person does business as a collection agency in the State," "[o]n its face, ... applies to all collection agencies operating in Maryland, and therefore does

not facially discriminate against out-of-state agencies." (citation omitted)).

Proceeding to the second tier of the analysis, Erin Capital, as the party challenging the applicability of the FCCPA as violating the Commerce Clause, has wholly failed to carry its burden on summary judgment. *See S. Waste Sys., LLC,* 687 F.Supp.2d at 1367. Erin Capital fails to offer any evidence to establish the clearly excessive burdens on interstate commerce or the dearth of benefits to the State of Florida. Absent such evidence, the Court cannot determine whether the FCCPA infringes the Commerce Clause through a proper *Pike* analysis. Accordingly, neither method for demonstrating a violation of the dormant Commerce Clause is established by Erin Capital, and summary judgment is not warranted on this ground.

Relying principally on *Midwest Title Loans, Inc. v. Mills,* 593 F.3d 660 (7th Cir.2010), and *Eric M. Berman, P.C. v. City of New York ("Berman"),* 895 F.Supp.2d 453 (E.D.N.Y.2012), Erin Capital maintains the FCCPA's registration requirement violates the dormant commerce clause. Erin Capital misapplies the "key issue" in both cases, insisting the two cases require the Court to determine where "Erin Capital's contracts with third-party debt collectors and law firms are formed." (Mot. 14). According to Erin Capital's line of reasoning, if the foregoing contracts were formed outside of Florida, then the contracts cannot be within the reach of the FCCPA without violating the dormant Commerce Clause—as the statute would regulate wholly extraterritorial commerce. (*See id.* 14–15). Both *Mills* and *Berman* held, "the Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Berman, P.C.,* 895 F.Supp.2d at 476 (altera-

tion, citations, and internal quotation marks omitted). Furthermore, the district court in *Berman,* relying in part on *Mills,* continued, "in grappling with whether the practical effect of a regulation is to control conduct beyond the boundaries of the State, the circuit courts have focused on the location (or locations) where the contract was formed." *Id.* at 478.

The question presented in *Mills* and *Berman* is inapplicable in the present case as the specific regulations challenged in those cases are distinguishable from the FCCPA—a distinction ignored by Erin Capital. In *Berman,* the plaintiffs challenged an amendment to a City of New York local law which extended the reach of a debt collection statute to include "a buyer of delinquent debt who seeks to collect such debt." *Id.* at 462 (emphasis omitted); *see also id.* at 485 ("[T]he basis for New York City's regulation of foreign debt buyers ... is the contractual relationship that these entities form with third-party debt collection agencies and law firms to collect on New York City debts on their behalf."). In *Mills,* the germane Indiana regulation sought to target lenders making loans to Indiana residents. *See Mills,* 593 F.3d at 662. The lender challenging the regulations in *Mills* only had offices in Illinois, and the loan agreements were completed in person, outside of Indiana. *See id.* at 667. As aptly stated by the district court in *Berman,* "the Court looks to where the transaction being regulated was consummated to determine whether the application of a law impermissibly regulates extraterritorial commerce." *Berman,* 895 F.Supp.2d at 483 (citation omitted). Here, the transaction being regulated is the actual debt collection activity occurring in Florida, not the out-of-state formation of loans or purchase of debts as in *Mills* and *Berman,* respectively. Thus, Erin Capi-

tal's reliance on these two cases is misplaced.[8]

Moreover, in *Berman*, in denying summary judgment, the court found there was a genuine issue of material fact "as to where [the] contracts [were] formed and, in turn, as to whether [the law's] application to [the debt purchaser] is unconstitutional." *Id.* at 484. The court acknowledged an affidavit which averred the debt purchaser entered into the relevant contracts outside of the regulating state, but found this plain statement, as well as assurances that the debt purchaser did not contact debtors directly, to be conclusory and insufficient to support summary judgment in the challenging party's favor. *See id.* at 490. Erin Capital relies on a virtually identical showing in the present case. (*See* Def.'s SMF ¶¶ 16–19 (citing an affidavit)). As in *Berman*, this evidence is insufficient to carry Erin Capital's burden on summary judgment.

In *Hauk*, the plaintiffs alleged violations of the FDCPA and an analogous Maryland statute concerning debt collection. *Hauk*, 749 F.Supp.2d at 360–61. The defendant, a debt collection entity, had filed lawsuits to collect purchased debts while those debts were in default. *See id.* The plaintiffs specifically alleged the defendant failed to obtain a license from the appropriate Maryland agency prior to filing the lawsuits. *See id.* at 361. The *Hauk* court applied a two-tier analysis to the defendant's commerce clause challenge and found the Maryland statute did not unreasonably burden interstate commerce. *See id.* at 362–63. There, the debt collection entity had transacted business within the state by "acquiring debts already in de-

fault and collecting them by filing suit through its attorneys" in state courts. *Id.* at 364. The court additionally held, "[i]t is far from clear ... that the time and expense of applying for a debt collector's license is excessive in relation to [the state]'s interests in requiring that debt collectors apply for licenses." *Id.* (citation omitted). *Hauk* presents virtually the same scenario—also analyzed pursuant to the governing two-tiered approach—as is presented here. While the *Hauk* court noted the defendant "remain[ed] free at a later stage to present evidence that the burden of the licensing requirement is clearly excessive to the local benefits," *id.*, Erin Capital makes no such showing here.

Accordingly, the FCCPA is not unconstitutional as applied to Erin Capital and summary judgment is denied on this basis.

### 2. Application of the FCCPA and FDCPA

Erin Capital contends it is not required to register with the State under the FCCPA as it is an out-of-state consumer debt collector. (*See* Mot. 13–14). Erin Capital further asserts there is no violation of Section 1692e because it made no false, deceptive, or misleading statement. (*See id.* 17–18). Erin Capital lastly argues the FDCPA does not apply as Collins failed to present any evidence that the underlying debt was consumer in nature. (*See id.* 18–19). Collins responds that Erin Capital is a business entity engaged in the collection of consumer debts within the meaning of Florida Statute section 559.553. (*See* Resp. 10–11). Collins further argues every lawsuit filed, wage garnishment action instituted, letter sent, or phone call made by Erin Capital is a false and misleading

---

**8.** The Court notes the parties' failure to provide any Eleventh Circuit case applying the extra-territorial analysis undertaken in *Mills* and *Berman*. On the papers alone, it remains unclear whether this analysis even fits within

the Eleventh Circuit's "two-tiered" approach to cases challenging a statute as a violation of the dormant Commerce Clause. *Fla. Transp. Servs., Inc.*, 703 F.3d at 1243.

statement under the FDCPA. (*See id.* 16–17). Collins additionally submits he has provided sufficient evidence to demonstrate the underlying debt is a consumer debt within the coverage of the FDCPA. (*See id.* 18–19). The Court addresses each argument in sequence.

### a. *The FCCPA's Registration Requirement*

The FCCPA, and specifically Florida Statute section 559.553 provides:

(1) After January 1, 1994, no person shall engage in business in this state as a consumer collection agency or continue to do business in this state as a consumer collection agency without first registering in accordance with this part, and thereafter maintaining a valid registration.

(2) Each consumer collection agency doing business in this state shall register with the office and renew such registration annually as set forth in [section] 559.555.

FLA. STAT. § 559.553(1)–(2). "Consumer collection agency" is defined as "any debt collector or business entity engaged in the business of soliciting consumer debts for collection or of collecting consumer debts, which debt collector or business is not expressly exempted as set forth in [section] 559.553(4)." *Id.* § 559.55(7). Section 559.553(4) provides an exemption for "[a]ny out-of-state consumer debt collector who does not solicit consumer debt accounts for collection from credit grantors who have a business presence in this state." *Id.* § 559.553(4)(h). Finally, "out-of-state consumer debt collector" is defined as:

any person whose business activities in this state involve both collecting or attempting to collect consumer debt from debtors located in this state by means of interstate communication originating from outside this state and soliciting consumer debt accounts for collection from creditors who have a business presence in this state. For purposes of this subsection, a creditor has a business presence in this state if either the creditor or an affiliate or subsidiary of the creditor has an office in this state.

*Id.* § 559.55(8).

■■■ Erin Capital plainly qualifies as a "consumer collection agency" as that term is defined by the FCCPA. Erin Capital is a debt collector or business entity engaged in the business of soliciting consumer debts for collection or of collecting consumer debts. As such, Erin Capital is required to register with the state in accordance with Florida Statute section 559.553(1)–(2). Although it is possible that Erin Capital might qualify for the out-of-state debt collector exemption outlined in section 559.553(4)(h), there is no evidence in the record as to whether Erin Capital qualifies for the exemption. In fact, Erin Capital plainly admits "it is not an 'out-of-state consumer debt collector.'" (Mot. 13). Absent evidence of an applicable exemption, Erin Capital was required to register as a consumer collection agency prior to instituting garnishment actions against Collins.

Erin Capital's admission that it is not an out-of-state debt collector as the term is defined in the FCCPA (*see id.*), appears to be the result of a glaring misinterpretation of the FCCPA. Erin Capital incorrectly suggests *only* out-of-state debt collectors are subject to the registration requirement. (*See id.* 14 ("Erin Capital does not qualify as an 'out-of-state consumer debt collector.' As a result, the FCCPA does not require Erin Capital to register.")). Erin Capital neglects to realize that a failure to meet the definition of "out-of-state debt collector" merely renders it ineligible for one of the narrow exemptions to the

requirement to register, but this does not avert the much broader registration requirement under section 559.553(1)–(2) which applies to every consumer collection agency (irrespective of any in-state or out-of-state distinction). Erin Capital similarly misinterprets the Eleventh's Circuit holding on this issue in *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir.2010), and provides no other support for its interpretation of the FCCPA.

In *LeBlanc*, the court considered whether the defendant in that case was required to register under the FCCPA. The court began its analysis by broadly declaring, "[t]he FCCPA requires consumer collection agencies to register as such in accordance with [section] 559.555 before engaging in debt collection activity within the state." *Id.* at 1197 (citing FLA. STAT. § 559.553). The remaining analysis focused on whether the defendant qualified for the narrow exemption afforded to some out-of-state consumer debtor collectors. *See id.* The court found the defendant did not so qualify. *See id.* ("[The defendant] argues that it is not subject to the FCCPA's registration requirement.... We disagree."). Acknowledging that only a subset of out-of-state debt collectors qualifies for the exemption the court specifically declared, "the FCCPA exempts from registration 'any out-of-state consumer debt collector who does not solicit consumer debt accounts for collection from credit grantors who have a business presence within Florida.'" *Id.* (alterations and emphasis omitted) (quoting FLA. STAT. § 559.553(4)(h)).⁹ Accordingly, the

FCCPA registration requirement applies to Erin Capital, and summary judgment in Erin Capital's favor is not warranted.

### b. *Violation of Section 1692e*

As stated, Erin Capital additionally contends there is no violation of Section 1692e because it made no false, deceptive, or misleading statement. (*See* Mot. 17–18).

▇▇▇ Not "all debt collector actions in violation of state law constitute *per se* violations of the FDCPA. Rather, the conduct or communication at issue must also violate the relevant provision of the FDCPA." *LeBlanc*, 601 F.3d at 1192 (footnote call number and citations omitted). "Section 1692e of the FDCPA prohibits debt collectors from using any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* at 1193 (citations and internal quotation marks omitted). Section 1692e provides a non-exhaustive list of potential violations of the statute. *See id.; see also* 15 U.S.C. § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: .... (5) The threat to take any action that cannot legally be taken or that is not intended to be taken."). "'Section 1692e(5) of the FDCPA includes the taking of action that cannot legally be taken.'" *Balthazor v. Sec. Credit Servs., LLC*, No. 11–60867–Civ, 2012 WL 171097, at *5 (S.D.Fla. Jan. 20, 2012) (alterations and internal quotation

---

9. The Court acknowledges one inconsistent remark in *LeBlanc* where the court stated, "[the defendant] qualifies as an 'out-of-state debt collector' within the meaning of the FCCPA." *LeBlanc*, 601 F.3d at 1198. Nevertheless, the preceding analysis and the relevant statutes indicate the court's statement is more appropriately interpreted as: although

an out-of-state debt collector, the defendant in *LeBlanc* did not qualify for the narrow exemption for certain out-of-state debt collectors, not that only out of state debt collectors were subject to the registration requirement. The latter interpretation is simply not compatible with the plain language of the statute.

marks omitted) (quoting *Bradshaw*, 765 F.Supp.2d at 730). More specifically, "the majority view ... h[olds] that Section 1692e(5) protects consumers against debt collectors that actually complete illegal acts as well as against debt collectors who merely threaten to complete those acts." *Bradshaw*, 765 F.Supp.2d at 730 (citing cases).

Having determined there is sufficient evidence to establish an issue of fact concerning whether Erin Capital was in violation of the FCCPA for its purported failure to register as a consumer collection agency, Collins must assert evidence sufficient to establish Erin Capital also violated the FDCPA to overcome summary judgment. Erin Capital's filing of the wage garnishment actions plainly qualifies as a violation of section 1692e(5) as actions that cannot legally be taken, or actually completed illegal acts. Namely, it was not entitled to engage in debt collection activity by filing garnishment actions without first registering with the State under the FCCPA. *See Balthazor*, 2012 WL 171097, at *5 (quoting *Bradshaw*, 765 F.Supp.2d at 730). "It would be illogical to read the FDCPA to condemn the mere threat to file a lawsuit that could not be legally instituted, but actually permit the filing of illegal lawsuits." *Id.* Thus, the Court denies summary judgment on this basis.

### c. *Evidence of a Consumer Debt*

Finally, Erin Capital argues the FDCPA does not apply as Collins has failed to present any evidence that the underlying debt was consumer in nature. (*See* Mot. 18–19).

"In order to prevail on an FDCPA claim, a plaintiff must prove that: (1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the

defendant has engaged in an act or omission prohibited by the FDCPA." *Bentley v. Bank of Am., N.A.*, 773 F.Supp.2d 1367, 1371 (S.D.Fla.2011) (citation and internal quotation marks omitted). "To recover under the FDCPA, a plaintiff must make a threshold showing that the money being collected qualifies as a 'debt.'" *Balthazor*, 2012 WL 171097, at *2 (quoting *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 837 (11th Cir.2010)). "[Section] 1692a(5) defines 'debt' as 'any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.'" *Id.* (quoting 15 U.S.C. § 1692a(5)).

Collins has produced some evidence sufficient to create a disputed issue of material fact as to whether the underlying collection activity arose from consumer debt. Collins provides an affidavit stating he "recall[ed] having a Master[C]ard while in College." (Collins Aff. ¶ 3). While Collins maintains he still has no "present recollection" of making any charges on the Citibank MasterCard, he asserts he has never made any business purchases, and has never used any credit card for any other purpose than the purchase of personal or household goods and services. (*Id.* ¶¶ 6–7). Such evidence is sufficient to overcome Erin Capital's Motion. *See Balthazor*, 2012 WL 171097, at *2 ("Plaintiff states unequivocally that this money was not used for business purposes. On this record, the Court finds that Plaintiff has successfully demonstrated a disputed issue of material fact as to whether the debt at issue was a consumer debt." (citation omitted) (citing *McCorriston v. L.W.T., Inc.*, 536 F.Supp.2d 1268, 1274 (M.D.Fla.2008))).

Erin Capital singularly relies on *Anderson v. AFNI, Inc.*, No. 10–4064, 2011 WL 1808779 (E.D.Pa. May 11, 2011), and argues Collins fails to establish the consumer debt element of an FDCPA claim. In *Anderson*, the plaintiff asked the court to infer the delinquent accounts at issue were debts as defined by the FDCPA because the accounts were in an individual's name, the addresses associated with the debts at issue were residential, and the collection agency treated the debts as if they were consumer debts. *See id.* at *14. The court determined this evidence amounted to no more than conjecture and speculation. *See id.* In the present case, Collins personally attests there were no business expenses charged to the credit card account in the underlying debt, and all of the expenses were for personal or household goods and services. Accordingly, the facts of the present case are more akin to *Balthazor* than *Anderson*, and summary judgment is not appropriate.

## C. Inclusivity of the Class

Erin Capital argues that class members whose wage garnishment claims were filed before August 3, 2011 fall outside the FDCPA's one-year statute of limitations as this case was filed on August 4, 2012. (*See* Mot. 12–13). Erin Capital further contends it is entitled to summary judgment with respect to any class members with wage garnishment actions filed after August 27, 2012—the date Erin Capital obtained the requisite Florida license. (*See id.* 12). Collins agrees. (*See* Resp. 19 ("Plaintiff acknowledges that Defendant first became licensed as a consumer collection agency in the State of Florida on August 27, 2012, and that the FDCPA has a one-year statute of limitations." (citation omitted))).

The FDCPA provides a one-year statute of limitations, which requires an action to enforce any liability must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The Complaint was filed on August 4, 2012. (*See* Compl.). The parties do not contest that Erin Capital first became licensed as a consumer collection agency in the State of Florida on August 27, 2012. (*See* Resp. 19). As such, Erin Capital is entitled to summary judgment with respect to any Class Plaintiffs with claims arising before August 3, 2011 or after August 27, 2012.

## IV. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that the Motion [ECF No. 60] is **GRANTED in part and DENIED in part** as follows:

1. Summary judgment is **DENIED** on the alleged violations of 15 U.S.C. section 1692e, except that summary judgment is **GRANTED** to the extent Collins and Class Plaintiffs seek to void the state court writs of garnishment in count I as discussed in Part III.A.1.

2. Summary judgment is **GRANTED** in favor of Erin Capital as to any Class Plaintiffs whose claims arose before August 3, 2011 and after August 27, 2012.

3. Summary judgment is **DENIED** in all other respects.